UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 25-160 |
| | ) | |
| RADEEM WALKER | ) | |
| | ) | |

SENTENCING MEMORANDUM
OF DEFENDANT RADEEM WALKER

I.      INRODUCTION

Radeem Walker's life has been benighted since birth and even before. Born to a teenager mother, drug and alcohol addicted for twenty years starting at age 14, shot twice, stabbed twice, passed around and often abused among family members, many of whom had their own struggles, growing up in a world of violence and despair, he nonetheless did not descend into violence; rather, he showed a spark, the strength, the fortitude to keep going in the struggle of life. But drug and alcohol abuse have been the bane of his life and the context of his violations of the law; here, trading a ten-dollar bag of marijuana for a handful of bullets.

The defense submits that the fair and reasonable sentence, and the sentence appropriate under the Sentencing Reform Act(which may be different things in some cases), is to sentence Mr. Walker to time served (since April 24, 2025),

1

followed by supervised release with the condition that he immediately participate in an in-patient drug treatment program at Gaudenzia, Inc., a placement that is available now. *See* Gaudenzia letter Tab J.

While he lacked family and community support in the past, he now has ample support as family and loved ones have turned their own lives around. While he lacked community, educational and vocational support, it is now available in the form of drug treatment and training. Of course, the Court must conduct the statutory analysis set out in 18 U.S.C. 3553. This Court has the responsibility to consider a variety of factors in fashioning a sentence, including protection of the public, deterrence and imposing a just sentence. Central to that analysis are the questions of how did Mr. Walker get here and how to craft a sentence so as to avoid him coming back. At the heart of the process of determining a just sentence is Mr. Walker's history and future potential, and the question of how Mr. Walker got here.

II.    FACTUAL BACKGROUND

The detailed PSR[1], as augmented by the Mitigation Report (Tab A) and letters from Mr. Walker's family (Tabs B through I), vividly describe Mr. Walker's life of neglect, victimization, lack of family, institutional and community support

---

[1] The PSR is an extraordinary example of the detailed and insightful reports that the Probation Department produces in this district. Relatedly, this Court has provided the defense with the resources and ample time to make a fulsome presentation on behalf of Mr. Walker.

and life-long reliance on drugs and alcohol as a means of coping with life.   They also describe a young man who has shown a spark, the strength, to better himself. He showed an entrepreneurial spirit in his various efforts at earning a legitimate living.  *See* PSR, paragraphs 91-97.  He found success in the Abraxis drug program as is often the with young people like Mr. Walker who found structure and the personal support of the staff, things he never experienced before. Mr. Walker has shown a commitment to work, often in an entrepreneurial sense, notwithstanding his educational and vocational deficits.

Mr. Walker has struggled since infancy without support from family or the community at large.  During his childhood, his family members were failing in their own struggles with responsibilities and substance abuse.  That alone is a basis for a downward variance.  Ironically, his family members have found success in life, living as productive citizens, some in recovery, but all expressing support for Mr. Walker and committing themselves to his success.  Ironic because that family support I also an appropriate basis for a downward variance even as the same family failed him for much of Mr. Walker's life.

Mr. Walker's criminal record requires comment.  He entered guilty pleas to multiple drug cases, was typically sentenced to probation or time-served, suggesting that the offenses were mitigated.  His repeated violations appear to have been based on his continued drug use.  The Court should ask why the defense

3

believes Mr. Walker's experience under supervision will be any different now. There is no guarantee that he will maintain sobriety while on supervision but now he has strong family support from family members who have achieved personal success and sobriety. Mr. Walker is older now and will have the support of fully-found drug treatment under the supervision of the Probation Department. Finally, he understands that this Court will not tolerate violations of conditions of supervision, unlike his experience in the Court of Common Pleas where judges were dealing with tremendous volumes of cases with insufficient resources

The nature of the offense—here, possession of miscellaneous bullets by a person convicted of a felon—is also the basis for a downward variance. The guideline for possession of ammunition is the same as if Mr. Walker were arrested in possession of a semi-automatic handgun but the resultant harms from such an offense are drastically different. Moreover, Mr. Walker's possession of bullets in this case was uniquely benign. He gave a man a "dime" or $10 bag of marijuana and the man gave him the bullets. The record suggests that Mr. Walker was passive in that transaction, that he had no intention of selling, trading, or using the bullets. He did was keep them on a piece of furniture in his room.

The related goal of avoiding unwarranted disparities among defendants convicted of similar offenses does not support a guideline sentence for several reasons. First, the offense of possession of bullets, particularly on this record, is in

4

no way within the heartland of such a broadly applicable guideline such that it makes no sense that a guideline sentence serves to avoid disparities. Second, the Sentencing Commission does not track sentencing data for cases involving possession of operable firearms as separate from cases involving mere possession of bullets. Fianlly, general deterrence is not advanced by a guideline sentence because of the rarity of pure ammunition cases.

The significance of goal of specific deterrence turns on how it is that Mr. Walker came to offend and how to see to it that he does not reoffend. Necessarily, that turns on his history of neglect and substance abuse discussed above. Incarceration will not accomplish specific deterrence if the underlying causes of his offense and lifestyle are not addressed.

The nature of available sentences is a factor the Court must consider and here supports a downward variance. It is likely that the government will recommend a guideline sentence of 57 months. Incarcerating Mr. Walker for almost five years will not materially advance the goals of just punishment and general deterrence for the reasons stated above. This case presents a question, one that is not hypothetical: What would be accomplished by additional incarceration when the problem that needs to be solved is Mr. Walker's addiction? Would the Bureau of Prisons do a better job of assisting Mr. Walker in moving towards a more productive life than his supportive family and substance abuse treatment by

respected professionals?  Or, is not more incarceration gratuitous in that it fails to advance the goals of the criminal law?  A sentence that addresses the causes of his criminal conduct will serve to avoid future crimes more than additional incarceration.

### III.    CONCLUSION AND SUMMARY

Mr. Walker asks the Court to look to the model, the example, of his family members, many of whom lived benighted lives of their own but who have demonstrated the strength of the human spirit.  Members of the family experienced incarceration, substance abuse, neglect and failure but fought through those deficits and losses, several with Gaudenzia's assistance.  Those same family members have now told the Court that they pledge their support to Mr. Walker in his travails.  Sadly, Mr. Walker is not unique but what is unique are the trajectories of the lives of his family members and their love and support for him.

Respectfully Submitted,

Date: November 21, 2025                      /s/ Robert E. Welsh, Jr.
                                             Robert E. Welsh, Jr.
                                             WELSH & RECKER, P.C.
                                             306 Walnut Street
                                             Philadelphia, PA 19106
                                             (215) 972-6430

                                             *Counsel for Radeem Walker*

6

<u>CERTIFICATE OF SERVICE</u>

I, Robert E. Welsh, Jr., hereby certify that on this date I delivered by ECF
and by direct email a true and correct copy of the foregoing document to the
following counsel:

> AUSA Branwen O'Donnell
> O'Donnell@usdoj.gov
> AUSA Samantha Arena
> Samantha.arena@usdoj.gov
> United States Attorney's Office
> 615 Chestnut St., Ste. 1250
> Philadelphia, PA 19106-4476

Date: November 10, 2025

> /s/ Robert E. Welsh, Jr.
> Robert E. Welsh, Jr.
> WELSH & RECKER, P.C.
> 306 Walnut Street
> Philadelphia, PA 19106
> (215) 972-6430
>
> *Counsel for Radeem Walker*