IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| v. | : | **CRIMINAL NO. 25-160** |
| **RADEEM WALKER** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Defendant Radeem Walker, a five-time convicted felon on court supervision, possessed seven rounds of .380 auto Hornady Critical Defense ammunition; thirty-eight rounds of .40 S&W Fiocchi ammunition; nine rounds of 9mm Fiocchi ammunition; a ProMag extended magazine containing 15 rounds of 9mm ammunition; and a Glock magazine containing 12 rounds of 9mm ammunition on March 25, 2025.

For these reasons, as well as for the reasons provided below, the government recommends a sentence of incarceration at the bottom of the advisory guideline range of 57 months, absent any basis for a below-guideline sentence addressed in the supplemental sealed attachment to this sentencing memorandum.

A sentencing court follows a two-step process, first calculating the range under the Sentencing Guidelines, and then considering that range along with all pertinent 18 U.S.C. § 3553(a) factors in determining the appropriate sentence. *See* USSG § 1B1.1 (Nov. 1, 2025).[1]

---

[1] Courts previously followed a three-step process, in which the court first calculated the guideline range, then next ruled on motions for departure, before considering the 3553(a) factors. *See United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). In an extensive amendment to the Guidelines effective November 1, 2025, the Sentencing Commission eliminated the departure provisions in the manual and dictated the two-step process described above.

At the second step of the sentencing process, "[t]he record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted). *See also Rita v. United States*, 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision making authority."); *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc) ("Failure to give 'meaningful consideration' to any such argument renders a sentence procedurally unreasonable which, when appealed, generally requires a remand for resentencing.").

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors.

I.   **BACKGROUND**

On June 20, 2025, the defendant pled guilty to being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1). During his plea colloquy, the defendant admitted that he unlawfully possessed that ammunition on March 25, 2025, subsequent to sustaining at least one felony conviction for a controlled substance offense.

II.     **SENTENCING CALCULATION**

    A.      **Statutory Maximum Sentence.**

The maximum sentence that may be imposed on the defendant is 15 years' imprisonment, a 3-year period of supervised release, a $250,000 fine, and a $100 special assessment.

    B.      **Sentencing Guidelines Calculation.**

The Probation Office correctly calculated the defendant's advisory guideline range as 57 months to 71 months. Presentence Investigation Report (PSR) ¶ 102.

III.    **ANALYSIS**

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 569 U.S. 530, 542 (2013) (quoting *Freeman v. United States*, 564 U.S. 522, 529 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 569 U.S. at 543. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.* at 544.

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public

from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

   1. **The Nature and Circumstances of the Offenses and the History and Characteristics of the Defendant**

The defendant engaged in a serious offense. As a convicted felon, he was prohibited from possessing a firearm or ammunition. He not only possessed ammunition suitable for an arsenal but did so while on court supervision. His crime falls squarely within the class of cases to which the applicable guidelines are addressed, and thus consideration of the nature of the offense, § 3553(a)(1), counsels in favor of the recommended sentence.

   2. **The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense**

Further, the defendant's history supports the need for significant incarceration. He has been convicted of felony drug offenses on numerous occasions and has spent much of his adult life either in custody or on court supervision. The defendant has a lengthy history of violating court supervision, resulting in the revocation of probation and the imposition of a new sentence. Many of these violations were for the same conduct for which he was being supervised by the court – trafficking narcotics. The recommended term of imprisonment is required "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." § 3553(a)(2).

### 3. The Need to Afford Adequate Deterrence to Criminal Conduct, and to Protect the Public from Further Crimes of the Defendant

The defendant's consistent history of violating court supervision with new arrests for the same criminal conduct demonstrates his inability to be deterred from future criminal acts. Furthermore, the recommended sentence of 57 months' incarceration affords adequate deterrence to others who would commit a similar offense and protects the public from further crimes of the defendant, for at least as long as he remains incarcerated.

### 4. The Need to Provide the Defendant with Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner

There is no demonstrated need to adjust the sentence in order to provide the defendant with needed educational or vocational training, medical care or additional treatment that cannot be adequately addressed by the Bureau of Prisons during incarceration. Should the defendant wish to avail himself of the Bureau of Prisons', or U.S. Probation Office's, offerings for education, training, or treatment, the recommended sentence will not inhibit those efforts. Thus, a review of this factor shows that the recommended sentence is appropriate in this case.

### 5. The guidelines and policy statements issued by the Sentencing Commission

The Sentencing Guidelines stand as another essential consideration in this case. While, to be sure, "[i]n accord with 18 U.S.C. § 3553(a), the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence," *Kimbrough v. United States*, 552 U.S. 85, 90 (2007), it remains the case that "the Commission fills an important institutional role: It has the capacity courts lack to 'base its determinations on empirical data and national experience, guided by a professional staff with appropriate

expertise,'" id. at 108-09 (quoting *United States v. Pruitt*, 502 F.3d 1154, 1171 (10th Cir. 2007) (McConnell, J., concurring)).

Thus, the Supreme Court stated: "We have accordingly recognized that, in the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *Kimbrough*, 552 U.S. at 109 (quoting *Rita v. United States*, 551 U.S. 338, 350 (2007)).

Significantly, the advisory guidelines are the sole means available for assuring some measure of uniformity in sentencing, fulfilling a key Congressional goal in adopting the Sentencing Reform Act of 1984. Reference to the guidelines, while carefully considering the 3553(a) factors particularly relevant to an individual defendant, is the only available means of preventing the disfavored result of basing sentences on the luck of the draw in judicial assignments. The Third Circuit explained:

> Even under the current advisory system, district courts must "meaningfully consider" § 3553(a)(4), i.e., "the applicable category of offense . . . as set forth in the guidelines." The section of *Booker* that makes the Guidelines advisory explains that "the remaining system, while not the system Congress enacted, nonetheless continue[s] to move sentencing in Congress' preferred direction, *helping to avoid excessive sentencing disparities while maintaining flexibility sufficient to individualize sentences where necessary.*" Booker, 543 U.S. at 264-65 (emphasis added). The Guidelines remain at the center of this effort to "avoid excessive sentencing disparities," and, as the *Booker* Court explained, the Sentencing Commission will continue "to promote uniformity in the sentencing process" through the Guidelines. Id. at 263. We have likewise observed that the "'Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country.'" *Cooper*, 437 F.3d at 331 (quoting *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005)).

*United States v. Ricks*, 494 F.3d 394, 400 (3d Cir. 2007) (emphasis in original). Therefore, the Supreme Court has held that "district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 552 U.S. at 50 n.6.

### 6. **The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct**

In addition, adherence to the recommended guideline range assures that the defendant's sentence is consistent with those imposed nationwide on similarly situated offenders, and thus complying with Section 3553(a)(6) and avoiding undue disparity. A sentence of 57 months is also important when considering the importance of avoiding unwarranted sentencing disparities.

This Section 3553(a) factor is not primarily concerned with sentencing disparities in a particular case; it is designed to ensure sentencing consistency among similarly situated defendants across the entire nation. *See United States v. Parker*, 462 F.3d 273 (3d Cir. 2006); *United States v. Carson*, 560 F.3d 566, 586 (6th Cir. 2009) ("Although it is true that § 3553(a)(6) requires a sentencing judge to consider 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct,'" that "factor 'concerns national disparities between defendants with similar criminal histories convicted of similar criminal conduct – not disparities between codefendants.'"). Accordingly, the recommended sentence in this case will help to ensure uniformity for other cases.

### 7. **The Need to Provide Restitution to Any Victims of the Offense**

Restitution is not an issue in this case.

### **Consideration of Acceptance of Responsibility and Mitigation Report**

The government has considered the defendant's acceptance of responsibility and mitigation provided and is recommending a sentence at the bottom end of the guidelines for those reasons. The government respectfully submits that the defendant has not set forth any persuasive argument to vary downward from the bottom end of the sentencing guidelines.

Here, the defense mitigation specialist opines that the defendant has "embraced fatherhood as a source for purpose", noting that prior to his arrest, the defendant's son was residing with him full-time. Radeem Walker Mitigation Report, p.1, 8. Significantly, the defendant's six-year-old son was residing in the same two-bedroom apartment where the defendant possessed the evidence recovered during the search warrant. Specifically, seven rounds of .380 auto Hornady Critical Defense ammunition; thirty-eight rounds of .40 S&W Fiocchi ammunition; nine rounds of 9mm Fiocchi ammunition were found on the left side of the windowsill. A black box next to that windowsill contained gloves, masks, and narcotics packing paraphernalia (plastic flip top containers used to package crack cocaine). Investigators located a plastic sandwich bag containing the white residue on the TV stand in the defendant's bedroom. At the time of the search warrant, investigators believed the residue to be crack cocaine. The evidence was analyzed by the Philadelphia Police Department's Chemistry Laboratory and tested positive for methamphetamine. Agents also located the ProMag extended magazine containing 15 rounds of 9mm ammunition and the Glock magazine containing 12 rounds of 9mm ammunition in the bottom drawer of a plastic chest of drawers located on the ground in the defendant's bedroom. Numerous additional flip top containers used to package crack cocaine were found throughout the defendant's bedroom.

Despite Walker's denial of possessing a firearm, he admitted to possessing the ammunition described above. It is hard to imagine why anyone – in particular a person ineligible to possess ammunition due to numerous felony convictions – would possess these items if not for the purpose of loading, carrying, and using a firearm. The defendant's close friend, Jason Jackson, stayed in the second of two bedrooms in the defendant's apartment. Jackson's room

contained a loaded firearm which he admitted to possessing. Significantly, the ammunition possessed by this defendant was not the type of ammunition needed for the Jackson's firearm.

Jackson's bedroom was located immediately next to the defendant's bedroom, as demonstrated by the below photograph.



These bedrooms were accessible from the kitchen. Inside of the freezer in that kitchen was an Eggo waffle's box which contained 40 glass vials of PCP. A digital scale was located in the center kitchen cabinet, and additional narcotics packaging paraphernalia.

Jackson's bedroom, located immediately next to the defendant's, contained a ceramic plate with over 35 grams of cocaine base and a razor blade with white residue on it, PCP, and with a loaded firearm. When speaking with ATF, the defendant maintained that he had no knowledge of the items in Jackson's bedroom nor the presence of PCP in the kitchen freezer.

When speaking to the defense mitigation specialist, the defendant acknowledged that he "permitted a friend (Jackson) to move into his apartment upon his friend's release from prison, even though he knew this friend had not reformed and was 'operating on a different level of responsibility.'" Radeem Walker Mitigation Report, p.8.  The defendant further stated, "I knew who he was and I knew it wasn't a good idea to let him move in, but I wanted to be helpful to show that I was a good friend…instead of having the room ready for him, I should have been getting that room ready for my son." Radeem Walker Mitigation Report, p. 8-9.

  The defendant is not charged with the items located in Jackson's bedroom. Neither man is charged with the PCP in the kitchen freezer, although arguably the defendant was in constructive possession of the PCP in the freezer.  The apartment was the defendant's and the residence where his six-year-old son resided with him. The narcotics and loaded firearm were all in locations easily accessible to a child.  It is miraculous that the defendant's son was not killed by accidental discharge or ingestion of various narcotics found in *both* bedrooms as well as the common areas of the apartment.

  The defense argues that this Court should sentence below the guideline range based on the defendant's family history. Those facts, however, while very unfortunate, do not warrant a reduced sentence. The defendant must be held responsible for his own actions, and he has proven to be a continual menace to public safety. Accordingly, as explained above, all the appropriate considerations of sentencing, such as the nature of the offense and the character of the offender, call for substantial incarceration in order to protect society from his otherwise persistent criminal conduct.

  Therefore, in sum, all of the appropriate considerations of sentencing favor the imposition in this case of a sentence of 57 months incarceration. As noted, the Sentencing Guidelines

present "the lodestone of sentencing," *Peugh*, 569 U.S. at 544, and that guide is once again persuasive in this

## IV.   CONCLUSION

The government's final recommendation regarding sentencing appears in the sealed attachment.

Respectfully submitted,

DAVID METCALF
United States Attorney

*/s Branwen O'Donnell*
BRANWEN O'DONNELL
SAMANTHA ARENA
Special Assistant United States Attorneys

# CERTIFICATE OF SERVICE

I hereby certify that this Sentencing Memorandum has been served on the Filing User identified below through the Electronic Case Filing (ECF) system and/or electronic mail:

Robert E. Welsh
WELSH & RECKER, P.C.
306 Walnut Street
Philadelphia, PA 19106

*/s Branwen O'Donnell*
BRANWEN O'DONNELL
SAMANTHA ARENA
Special Assistant United States Attorney

DATED:  November 21, 2025.